IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| FMBC Investments, LLC, ) | Case No: 3:21-bk-01880 |
| ) | Judge Walker |
| Debtor. ) | |

### AMENDED DISCLOSURE STATEMENT TO ACCOMPANY DEBTOR'S AMENDED PLAN OF LIQUIDATION DATED MARCH 8, 2023

FMBC Investments, LLC (the "Debtor") submits this Amended Disclosure Statement (the "Disclosure Statement") in connection with its Amended Plan of Liquidation (the "Plan") dated March 8, 2023. The purpose of this Disclosure Statement is to provide adequate information to creditors and parties in interest (hereinafter, "Claimants") in the above Chapter 11 case, in order to enable Claimants to make an informed decision in exercising their rights under the Bankruptcy Code. All capitalized terms not specifically defined herein shall have the definition ascribed to them in the Plan, accompanied herewith.

### INTRODUCTION

On June 18, 2021, the Debtor filed a voluntary petition for relief, thereby commencing this case under Chapter 11, Title 11, United States Code, in this Court. Since the filing of the petition, the Debtor has remained in possession of its property and operated its affairs as Debtor-in-Possession. No trustee or examiner has been appointed, nor has a committee of unsecured creditors been appointed.

This Disclosure Statement is intended to contain "adequate information" (as defined in 11 U.S.C. § 1125(a)) of a kind, and in sufficient detail, that would enable a hypothetical investor typical of the holders of Claims or Interests in the case to make an informed judgment about the Plan.

Article I of the Plan contains definitions of certain terms. Where those terms are capitalized in this Disclosure Statement, they have the meaning set forth in Article I of the Plan.

## DISCLAIMER

No representations concerning the Debtor, other than as set forth in this Disclosure Statement, are authorized by the Debtor. Any representations or inducements made to secure your consent to the terms of the Plan that are other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision.

The information contained in this Disclosure Statement has been primarily derived from the Debtor. The Debtor believes the information to be correct; however, the information has not been independently verified in every instance, nor has it been subjected to a certified audit.

## TAX CONSEQUENCES

Section 1125(a)(1) of the Bankruptcy Code requires the Debtor to include a discussion of any potential material federal tax consequences of the Plan. Creditors and equity interest holders concerned with how the Plan may affect their tax liability should consult with their accountants, attorneys, or advisors. A tax consequence of the Chapter 11 filing is that the Debtor is entitled to exclude from gross income any cancellation of debt resulting from this Plan. The Debtor is not aware of any potential material federal tax consequences to it or a hypothetical investor.

## THE DEBTOR

A.   **Profile of the Debtor**

The Debtor is a Tennessee limited liability company that was formed in May of 2008. Since its formation, and until a sale of its real estate during the pendency of this Chapter 11 bankruptcy case, the Debtor operated as a real estate development firm. Currently, the Debtor's single asset of value is the real estate located at 2404, 2500, 2518, and 0 West Heiman Street, Nashville,

Tennessee 37208 (collectively, the "West Heiman Properties"). The Debtor is owned by Shawn Bailes (75%) and his wife, Elizabeth Bailes (25%). The Debtor acquired a portion of the West Heiman Properties (0 West Heiman Street, Nashville, TN 37208) on October 23, 2015, and acquired the remaining portions (2404, 2500, and 2518 West Heiman Street, Nashville, Tennessee 37208) of the West Heiman Properties on December 28, 2018.

The Debtor sought bankruptcy relief for the purpose of liquidating its estate and paying in full all its creditors. Specifically, the Debtor chose to proceed under Chapter 11 to maximize and preserve the value of its assets, avoid Chapter 7 trustee fees, allow the Debtor to maintain the West Heiman Properties in a marketable condition prior to a sale, avoid litigation and/or an auction of the West Heiman Properties, and otherwise avoid the appearance of a distressed sale. Such a liquidation of its real estate, which occurred pursuant to Court approval, has allowed the Debtor to maximize the net proceeds of a sale of the West Heiman Properties and further allow all creditors to be paid in full.

**B.  Post-Bankruptcy**

The Debtor's Initial Debtor Interview occurred on June 28, 2021, and the Debtor's Meeting of Creditors occurred on July 23, 2021.

1. <u>Employment Motions</u>. On July 27, 2021, the Debtor filed both (i) a *Motion for Order Approving Employment and Retention of Dunham Hildebrand, PLLC as Counsel for Debtor* (*see* Docket No. 37) and (ii) a *Motion to Employ Roland W. Baggott III and the Law Firm of Baggott Law, PLLC as Special Counsel* (*see* Docket No. 38), which were both granted by the Court on September 7, 2021 (*see* Docket Nos. 48 and 49). On April 26, 2022, the Debtor filed its motion to approve the employment of a real estate agent (*see* Docket No. 77), which was subsequently approved by the Court (*see* Docket No.

83).

2. <u>McNabb Proceedings</u>.

   a. On July 2, 2021, McNabb filed his *Motion of Garry W. McNabb for Relief from the Automatic Stay to Arbitrate Contractual Disputes* (the "Stay Relief Motion") filed by Garry W. McNabb ("McNabb") (*see* Docket No. 15). The Stay Relief Motion, and the response thereto, concerns whether McNabb is a creditor of the estate or a part-owner of the West Heiman Properties and whether such dispute should be compelled to arbitration (*see* Docket Nos. 15, 18, 27, 28, 29, and 31). On November 2, 2022, the Court denied the Stay Relief Motion. *See* Docket No. 94.

   b. On April 14, 2022, McNabb filed his *Complaint to Deny Discharge*, Case No. 3:22-ap-90067. This matter has been stayed pending a determination of confirmation of the Plan. *See* Adv. Pro. Docket No. 7.

3. <u>Original Plan of Liquidation</u>.

On October 18, 2021, the Debtor filed its original plan of liquidation and disclosure statement. See Docket Nos. 53, 54. The original plan contemplated a proposed sale of the West Heiman Properties to Mack Props, LLC. McNabb filed a formal objection to the original plan, which set forth his position regarding the Debtor's alleged misclassification of McNabb's claims in relation to the West Heiman Properties. See Docket No. 73. The Office of the United States Trustee filed informal objections to the original plan, which were resolved without a formal objection. On February 24, 2022, the Court approved the Debtor's disclosure statement. The Debtor did not proceed forward with the original plan after Mack Props, LLC failed to close on the purchase of the West Heiman Properties.

4. Sale Motions.

   a. The Debtor filed a *Motion for Assumption of Purchase and Sale Agreement and Order Approving Sale Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363* (*see* Docket No. 39), which proposed a sale of the West Heiman Properties to Mack Props, LLC. This motion was granted at a hearing by the Court on September 8, 2021. *See* Docket No. 61.

   b. After Mack Props, LLC failed to close on the purchase of the West Heiman Properties, on April 26, 2022, the Debtor filed a *Motion for Order Approving Sale Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363* (*see* Docket No. 78), which proposed a sale of the West Heiman Properties to M2 Development, LLC. On November 22, 2022, the Court granted this motion. *See* Docket No. 99, amending Docket No. 87. On December 2, 2022, the Debtor sold the West Heiman Properties to M2 Development Partners, LLC.

C. **Assets of the Debtor**

As of the Petition Date, the Debtor's primary asset consisted of the West Heiman Properties. The Debtor estimated the fair market value of the West Heiman Properties to be $7,500,000 based upon the proposed sale to Mack Props, LLC on the terms and conditions set forth in the parties' purchase and sale agreement. The purchase agreement contained a condition to sale, namely the purchaser's ability to rezone the West Heiman Properties for the purchaser's intended use. Absent the rezoning, the Debtor is unaware of the fair market value of the West Heiman Properties as of the Petition Date. Mack Props, LLC ultimate was unwilling or unable to close on the purchase of the West Heiman Properties; however, the Debtor was able to identify a

subsequent purchaser, M2 Development, LLC. The sale of the West Heiman Properties to M2 Development Partners, LLC closed on December 2, 2022 pursuant to Court approval. *See* Docket Nos. 87, 99. This sale resulted in proceeds in the amount of $7,461,587.30, of which $6,781,082.00 has been segregated as "Disputed Funds" pursuant to an agreement between the Debtor and McNabb. *See* Docket Nos. 87, 99. As of the filing of this Plan, the Debtor has approximately $7,483,734 (inclusive of the Disputed Funds) in its debtor-in-possession accounts. Additionally, as of the Petition Date, and in addition to causes of action with an unknown value, the Debtor has an interest in a certain executory right of first refusal option contract set forth in Article IX of the Plan. The Debtor places an unknown value on its interest in this executory contract because (i) it does not know if or when it will have the opportunity to exercise its option, and (ii) it cannot know the value of the subject property if or when it will have the opportunity to exercise its option.

Lastly, the Debtor asserts an interest in a certain cause of action against v3 Realty, LLC for breach of fiduciary duty and negligence per se (*see* Docket No. 17, page 5) the value of which are unknown and are immaterial given that the proceeds from the sale of the West Heiman Properties will satisfy all creditors in full. The Plan retains and reserves all causes of action, including avoidance actions, for pursuit or abandonment by the Debtor after Confirmation, within its sole discretion. The terms of the Plan give the Debtor the sole discretion to pursue any possible cause of action, including without limitation any preference pursuant to Section 547, voidable transfer claims pursuant to Section 548, or any other avoidance action.

All creditors identified, if any, in the Debtor's Statement of Financial Affairs (Docket No. 17) filed in this case as having received payments from the Debtor in the 90 days (or one year if an insider) preceding the Petition Date may be the defendant of an avoidance action or other cause of action if the total payments to them exceeds $6,825.00. Thus, they are the potential defendants

of an avoidance action pursuant to Section 547 of the Bankruptcy Code. The persons or entities identified, if any, in the Debtor's Statement of Financial Affairs filed in this case as having received transfers outside the ordinary course of business or financial affairs of the Debtor within two years of the commencement of this Bankruptcy Case may be the defendant in an avoidance action or other cause of action. Thus, they are the potential defendants in an avoidance action pursuant to Section 548 of the Bankruptcy Code.

The Plan reserves and retains any and all other causes of action regardless of whether they are specifically identified or referred to herein. Nothing contained in this Disclosure Statement or in the Plan shall have any preclusive effect against the Debtor (whether by waiver, admission, estoppel, or otherwise) in any cause of action or proceeding that may exist or occur in the future. Each creditor and party in interest is advised to review the Plan, the Debtor's filed Schedules and Statement of Financial Affairs, and the creditor's prior dealings with the Debtor, to determine whether any cause of action or avoidance action may be pursued against it.

## DEBTOR'S LIABILITIES

**A.    Post-Petition Administrative Expenses**

Administrative expense claims include the actual, necessary costs and expenses associated with preserving the Debtor's bankruptcy estate. These claims are more fully set forth in 11 U.S.C. § 503 and are accorded priority under 11 U.S.C. § 507. The administrative claims in this case are as follows:

1.    <u>United States Trustee Quarterly Fees</u>. The Debtor is current, and will remain current, with payments to the United States Trustee through the entry of a final decree closing the bankruptcy case.

2.    <u>Payments to Professionals</u>. The Debtor shall remain current with payments to all

professionals employed during this bankruptcy case. On July 27, 2021, the Debtor filed both (i) a *Motion for Order Approving Employment and Retention of Dunham Hildebrand, PLLC as Counsel for Debtor* (*see* Docket No. 37) and (ii) a *Motion to Employ Roland W. Baggott III and the Law Firm of Baggott Law, PLLC as Special Counsel* (*see* Docket No. 38). Subsequently, on September 7, 2021, the Court entered both the *Order Approving Employment and Retention of Dunham Hildebrand, PLLC as Counsel for Debtor* (*see* Docket No. 48) and the *Order Approving Motion to Employ Roland W. Baggott III and the Law Firm of Baggott Law, PLLC as Special Counsel* (*see* Docket No. 49). As of the filing of the Plan, no orders approving payments to counsel for the Debtor have been entered.

B. **Secured Claims**

**IN THE EVENT ANY OF THE CLAIMANTS LISTED IN THIS SECTION FILE A PROOF OF CLAIM STATING THAT NO PART OF THE CLAIM IS SECURED, OR UPON AN OBJECTION TO A SECURED CLAIM WHEREIN AN ORDER OF THE COURT DETERMINES A CLAIM TO BE UNSECURED, THEN SUCH CLAIM SHALL BE DEEMED ENTIRELY UNSECURED AND TREATED AS SUCH PURSUANT TO THE PLAN.**

McNabb holds a Secured Claim against the Debtor in the amount of $2,105,753.32 plus all amounts to which McNabb is entitled pursuant to 11 U.S.C. § 506. McNabb's Secured Claim arises from that certain *Secured Non-Recourse Promissory Note*, dated May 29, 2020, (the "Note") (*see* Docket No. 15-4), that certain *Deed of Trust and Security Agreement*, dated May 29, 2020, (the "Deed of Trust") (*see* Docket No. 15-3), and that certain *Collateral Loan Agreement*, dated May 29, 2020, (the "CLA") (*see* Docket No. 15-1). The Deed of Trust was recorded with the Davidson County Register of Deeds on June 2, 2020, as Instrument No. 20200602-0056438. The Debtor intends to pay McNabb's Secured Claim in full upon a sale of the West Heiman Properties in connection with a liquidation of the Debtor's estate. Notwithstanding the foregoing, the Debtor expressly reserves the right to object to McNabb's Secured Claim prior to the Claim Objection

Deadline. McNabb disputes the Debtor's position and asserts that he exercised a certain conversion option that converted his secured claim to an equity position in the West Heiman Properties. As a result, McNabb claims he is entitled to $6,781,082.00. *See* Docket No. 99.

### C. Priority Unsecured Claims

The Debtor is unaware of any priority unsecured claims.

### D. General Unsecured Claims

The Debtor has general unsecured debt, which is reflected in the Schedule E/F of the Debtor's Schedules (the "General Unsecured Claims"). The total amount of the General Unsecured Claims, as of the Petition Date, totals $534,728.77 (*see* Docket No. 19). The Debtor intends to pay the General Unsecured Claims in full from the proceeds of the West Heiman Properties.

## SUMMARY OF THE PLAN

### A. Classification of Claims and Interests

The Claims of creditors and Interests of equity security holders under the Plan are divided into the following classes:

Class 1 *Secured Claim of McNabb*

Class 2 *General Unsecured Claims*

Class 3 *Ownership Interests*

### B. Treatment of Claims

Pursuant to 11 U.S.C. § 1124, Classes 1 and 2 are Impaired and Class 3 is Unimpaired. The following is a summary of the treatment provided in the Plan to each Class of Claims and Interests.

1. <u>Class 1: Secured Claim of McNabb</u>. Class 1 consists of the Secured Claim of McNabb. The Class 1 Claim shall be Allowed in the amount of $2,105,753.32, plus any amount to which McNabb is entitled pursuant to 11 U.S.C. § 506. The Debtor intends to pay the Class 1

Claim in full on the Effective Date.

2. <u>Class 2: General Unsecured Claims</u>. Class 2 consists of the General Unsecured Claims. The Class 2 Claims shall be Allowed in the amount of $534,728.77. The Debtor intends to pay the Class 2 Claims in full on the Effective Date.

3. <u>Class 3: Ownership Interests in the Debtor</u>. Class 3 consists of the ownership interests of the Debtor. Under the Plan, the Debtor shall retain all ownership interest in all property of the estate, subject to the terms of the Plan.

## SUMMARY OF OTHER PROVISIONS OF THE PLAN

<u>Executory Contracts and Unexpired Leases</u>. The Debtor intends to assume, pursuant to 11 U.S.C. § 365(a), that certain Right of First Refusal to Purchase Real Estate option agreement, dated October 1, 2014, by and between Jackie Cox and the Debtor. Specifically, this contract affords the Debtor the exclusive and irrevocable right of first refusal and first option to purchase property located at 1062 2nd Avenue South, Nashville, Tennessee 37210. This contract is of record with the Davidson County Register of Deeds, Instrument No. 20141002-0091241. Nothing herein shall be construed as an exercise of the Debtor's right or otherwise an obligation to exercise its right. Notwithstanding the foregoing, the Debtor shall be deemed to have rejected every other executory contract as of Confirmation of the Plan. The Debtor reserves its right to assume any executory contract needed to be assumed in order to preserve the value of the Debtor's estate prior to a full liquidation, as necessary, thereof.

<u>Legally Binding Effect</u>. Confirmation of the Plan will bind the Debtor and all creditors and interest holders, whether or not they accept the Plan. The distributions of consideration provided for in the Plan will be in exchange for, and in complete settlement and satisfaction of, all Claims and Interests, including any Claim or Interest after the Petition Date. On the Confirmation Date,

all creditors shall be precluded from asserting any Claim against the Debtor or its property based upon any transaction or other activity of any kind that occurred prior to the Confirmation Date.

Plan Default.   An event of default as to any Claim shall exist only if the Debtor (i) fails to make monetary payment when due and that default is not cured within ten (10) days following delivery of written notice of that default, (ii) fails to insure any property securing any Allowed Secured Claim of any creditor for the value of such property, or (iii) disposes of the property securing any Allowed Secured Claim of any creditor without either the consent of the creditor holding such Allowed Secured Claim or the payment of the net sale proceeds to that creditor.

Modification of the Plan. The Debtor may propose amendments to or modifications of the Plan at any time prior to the Confirmation Date provided that the amended Plan satisfies the requirements of the Code.  If the circumstances warrant, after the Confirmation Date and before Substantial Consummation of the Plan, the Debtor may modify the Plan, provided that the Plan, as modified, meets the requirements of the Code, and the Court, after a hearing, confirms the Plan as modified. Unless, within the time fixed by the Court, a creditor changes its previous acceptance or rejection of the Plan, such previous election shall be deemed applicable to the amended Plan.

Plan Injunction. Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all creditors and persons who have held, hold or may hold Claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of Claims against the Debtor, or on account of claims released pursuant to the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any assets or property of same; or (iii) creation, perfection or enforcement of any

Case 3:21-bk-01880    Doc 118    Filed 03/08/23    Entered 03/08/23 23:53:52    Desc Main
Document      Page 11 of 16

encumbrance of any kind against the Debtor arising from a Claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the Allowed Amount of any Claims that arose prior to the Effective Date. Parties asserting entitlement to payment of Administrative Expenses incurred prior to the Confirmation Date and Holders of Claims shall be permanently enjoined from asserting any Claim against the Debtor or its retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such Claim or Interest is allowed under Section 502 of the Bankruptcy Code.

<u>Post-Confirmation Jurisdiction</u>. The Court shall retain exclusive jurisdiction over this Chapter 11 case for the purpose of determining any matters pertaining to the Plan or the Confirmation Order, as well as determining all disputes, suits or controversies arising out of the Plan and its interpretation, enforcement or Consummation. Persons reading this Disclosure Statement should refer to the Plan for a more detailed discussion of the Court's continuing jurisdiction over the Debtor and this case.

<u>Post-Confirmation Reporting</u>. All post-confirmation reporting shall be made by the Debtor in accordance with Local Rule 2015-2(b).

## CONFIRMATION REQUIREMENTS

To confirm the Plan, the Court must, after notice, hold a hearing on the issue of confirmation. Any creditor may object to confirmation of the Plan and appear at the confirmation hearing to prosecute such objection. The requirements for confirmation of a Chapter 11 Plan are set forth in detail in 11 U.S.C. § 1129. The following is a summary of the more notable requirements.

Feasibility. Pursuant to 11 U.S.C. § 1129(a)(11), the Court is required to find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor. There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Debtor asserts that this aspect of feasibility is satisfied because the Debtor has received net proceeds from the sale of the West Heiman Properties that will satisfy any and all Claimants in full. The second aspect of feasibility concerns whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments. Here, the Debtor will make all payments due pursuant to the Plan on the Effective Date. Accordingly, the Debtor's ability to make its requirements distributions under the Plan are feasible. Additionally, the Plan has been proposed in good faith.

Absolute Priority Rule. The Absolute Priority Rule provides that a plan is fair and equitable with respect to a rejecting class if the rejecting class receives payment in full or as long as no class junior to it receives or retains property under the Plan. Upon submission to the Court, the Plan satisfies the absolute priority rule because all impaired Classes of Claims in this Chapter 11 case will receive payment in full.

Liquidation Analysis. Pursuant to 11 U.S.C. § 1129(a)(7), the Debtor must show that each holder of an impaired Claim or Interest has accepted the Plan, or that each holder will receive or retain under the Plan on account of the holder's Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount such holder would receive or retain if the Debtor's assets were liquidated under Chapter 7 of the Code on said date. The Debtor intends to satisfy all creditors in full with the proceeds of the sale of the West Heiman Properties.

Accordingly, the Debtor submits that confirmation of the Plan is in the best interests of all creditors and should be approved.

## CONFIRMATION PROCEDURES

The Plan cannot be consummated unless it is confirmed by the Court. Confirmation of the Plan requires that, among other things, either (i) each Class of Claims or Interests that is impaired by the Plan has voted to accept the Plan by the requisite majority, or (ii) the Plan is determined by the Court to be fair and equitable, as defined by the Bankruptcy Code, with respect to Classes of Claims or Interests that have rejected the Plan. The Bankruptcy Code also requires that the confirmation of the Plan be in the "best interests" of all holders of Claims and Interests. The Debtor believes that the Plan meets the Confirmation requirements of the Bankruptcy Code.

<u>Creditors Eligible to Vote</u>. Only the votes of Classes whose Claims or Interests are impaired by the Plan will be counted in connection with the Confirmation of the Plan. Generally, and subject to the specific provisions of § 1124 of the Bankruptcy Code, a Class is "impaired" if its legal, equitable or contractual rights attaching to the Claims or Interests of that Class are modified by the Plan. In determining acceptance of the Plan, votes will be counted only if submitted by a holder of an Allowed Claim or Allowed Interest. Claims or Interests may be Allowed by the Court for voting purposes only. Classes 1, 2, and 3 of the Plan includes Claims or Interests that are not impaired under the Plan.

<u>Acceptance Necessary to Confirm the Plan</u>. For the Plan to be accepted and thereafter confirmed, it must be accepted by at least one Class of Claims which is impaired by the Plan. Under § 1126 of the Code, any impaired Class is deemed to have accepted the Plan if: (i) with respect to a Class of Claims, votes representing at least two-thirds (2/3) in amount and more than one-half (1/2) in number of Allowed Claims that have voted in that Class have accepted the Plan,

and (ii) with respect to a Class of Interests, votes representing at least two-thirds (2/3) in amount of those Allowed Interests that have voted have accepted the Plan; provided that the vote of any holder of an Allowed Claim or Allowed Interest whose acceptance or rejection of the Plan was not made in good faith, as determined by the Court, will not be counted.

If a Class of Claims has been impaired by the Plan, the impaired Class must accept the Plan. Otherwise, the Court, in order to confirm the Plan, must independently determine that the Plan provides to each holder of a Claim or Interest, as the case may be, of such Class a recovery which has a value, as of the Effective Date, at least equal to the value of the distribution which such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

In this case, the Debtor asserts that all classes of claims are unimpaired and will be presumptively determined to have accepted the Plan.

Manner of Voting. In voting for or against the Plan, please use only the ballot sent to you with this Disclosure Statement. A copy of such ballot is attached hereto as **Exhibit A**. If a creditor has an Allowed Claim or Allowed Interest in more than one Class, such creditor may vote multiple ballots. Holders of Allowed Claims or Allowed Interests entitled to vote to accept the Plan may vote by completing, dating, signing and transmitting the ballot to: Dunham Hildebrand, PLLC, 2416 21st Avenue South, Suite 303, Nashville, Tennessee 37212, Email: griffin@dhnashville.com.

To be counted, a ballot must be received at the above address on or before the date and time set forth in the ballot. A ballot, once submitted, cannot be withdrawn or modified except as provided under the Bankruptcy Code.

Confirmation Without Unanimous Acceptance. Section 1129(b) of the Bankruptcy Code provides that the Plan may be confirmed by the Court despite not being accepted by every impaired

Class if: (i) at least one impaired Class of Claims, excluding the Claims of insiders, has accepted the Plan; and (ii) the Court finds that the Plan does not discriminate unfairly and is fair and equitable to the rejected Classes. Among other things, such a finding would require a determination by the Court that the Plan provides that no holder of an Allowed Claim or Allowed Interest junior to the rejecting Class will receive or retain property or payment under the Plan until or unless such rejecting Class is paid in full.

The Debtor reserves the right pursuant to § 1129(b) of the Code to request the Court to confirm the Plan if all of the applicable requirements of § 1129(a)-(b) of the Code have been met. In addition, the Debtor reserves the right pursuant to § 1126(e) of the Code to request the Court to strike any ballot rejecting the Plan cast by any holder of a Claim or Interest which was not cast in good faith.

<u>Hearing on Confirmation of the Plan</u>. The Court will set a hearing on Confirmation of the Plan to determine whether all requirements for Confirmation have been satisfied.

Respectfully Submitted,

/s/ Griffin S. Dunham
Griffin S. Dunham
DUNHAM HILDEBRAND, PLLC
2416 21st Ave. South, Suite 303
Nashville, Tennessee 37212
615.933.5850
griffin@dhnashville.com
*Counsel for the Debtor*